UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TERRELL JENKINS,
PLAINTIFF,

V.

Anthony Annucci, Comm. (now retired)
Michael Capra, Supt., John Doe (1), D.S.A.,
John Doe (2), D.S.S., Alverado, SGT.,
C.O. R. Franklin, C.O. J. Reyes,
In their Official, and Individual Capacities
DEFENDANTS,

---

CIVIL RIGHTS COMPLAINT
PURSUANT TO 42 U.S.C. §
1983

CASE NO. 25 CV 7478

Plaintiff Demand Jury Trial

## JURISDICTION

1) This is a civil action seeking relief and for damages to defend Protect the rights guaranteed by the constitution of the United States. This action is brought pursuant to 42 U.S.C. § 1983. The Court has Jurisdiction over this action pursuant to 28 U.S.C. § 1343(3) and (4)and 2201

## PARTIES

2) Plaintiff: Terrell Jenkins, 14-A-2803
Address: Eastern Corr. Fac., P.O. Box 338
Napanoch, New York 12458-0338

RECEIVED
SDNY PRO SE OFFICE
2025 SEP -9 PM 1:48

3) A) Defendant: Anthony Annucci
Official Position NYS DOCCS Commissioner
The Harriman State campus
1220 Washington Ave.,
Albany, New York 12226-2050

B) Defendant: Michael Capra
Superintendent of Sing Sing Corr. Fac.,
Address: 354 Hunter Street
Ossining, New York 10562

C) Defendant: John Doe (1)
Official Position: Deputy Supt., of Admin.,
Sing Sing Corr. Fac.,
354 Hunter Street
Ossining, New York 10562

ADDITIONAL DEFENDANTS

D) Defendant: John Doe (2)
Official Position: Deputy Supt. of Security
Sing Sing Corr. Fac.,
354 Hunter Street
Ossining, New York 10562

E) Defendant: Alvarado, Sgt.
Official Position: Sergeant
Sing Sing Corr. Fac.,
Address: 354 Hunter Street
Ossining, New York 10562

F) Defendant: R. Franklin,
Official Position: Correction Officer
Sing Sing Corr. Fac.,
354 Hunter Street
Ossining, New York 10562

G) Defendant: J. Reyes,
Official Position: Correction Officer
Sing Sing Corr. Fac.,
354 Hunter Street
Ossining, New York 10562

4) PLACE OF PRESENT CONFINEMENT

a. Is there a prisoner grievance procedure at this facility?

[YES]

b. If your answer on 4A is YES, did you present the facts relating to your complaint in this grievance program?

[YES]

If your answer to 4B is YES,

(i) What steps did you take? I grieved that on the morning of October 13, 2022, while returning from the mess hall at 7:15 am., I was surround by (3) assailants and attacked on 'N gallery'. (See ex "C" 1, Grievance dated 11-2022)

(ii) What was the result of your grievance? Grievance denied. Investigation reveals there is a well-documented unusual incident Report on file surrounding this incident. Efforts are made to Ensure all incarcerated individuals are safe, however, unfortunate incidents happens, as in this case. Grievant seen by medical and further followed up by mental health staff during rounds. (See ex "C" 1- c-3, grievance, supt. response, and care
Decision).

5) PREVIOUS LAWSUITS

a. Have you filed other lawsuits in state or federal court relating to your imprisonment?

[NO]

6) FACTS

On this particular morning, October 13, 2022, petitioner chose To go to breakfast (chow) prior to starting my laundry porter duties, But during that, moment petitioner took notice how the assigned female gallery officer, J. Reyes who had let us out for chow, who also controlled the movement on the gallery, was

nowhere to be seen, not on her post, and didn't even clear the gallery before leaving her post, unlike what was commonly done by steady Officer Camron.

On this same morning, October 13, 2022, petitioner re-call wanting to retain the laundry duffle bag from the gallery supply cell next to the office before heading to the mess-hall that morning for breakfast meal. Upon returning, heading back to my cell location at N-73 cell, I re-call again, how I still did not see C.O. J. Reyes, who was the assigned gallery officer. But yet I'd notice several I/I's on the gallery who did not go to a.m. breakfast, and some who didn't even lock on the gallery at all, just hanging out, fraternizing among others in front of I/I's cells that were locked in and didn't attend chow.

On October 13, 2022, as Petitioner reached the square of N-Gallery control box, at around N-44/45 cell, an area which allowed staff, and authorized I/I's to cross over to the opposite side, which is particularly the front-side in "A" block, along with the ability to access the gated stairwell there. The front-side is called J-gallery on this particular level, I may add. At this time I'd notice the assigned C.O. J. Reyes, who had the gallery, standing between the two (2) galleries (J & N), holding the stairwell gate open for others, secretively conversing with the J-gallery laundry porter, the porter who'd played a significant role in luring me into the ambush that morning in the rear section of N-Gallery, close to the cell I locked in N-73 cell. Here, I observed quite a few I/I's hanging out, fraternizing among others locked in their cells, wearing rubber latex gloves, furtively obtained to gain privilege at being able to move around the galleries freely in the pretense of being a gallery clean-up porter's. At this time, I asked C.O. J. Reyes, the assigned gallery officer, for the laundry duffle bag from the locked supply cell there on N-gallery, which is required, for me to attend to my laundry porter duties, still at no perceivable moment did C.O. J. Reyes make any real attempts to clear and control her gallery. Soon after I'd attain the laundry duffle bag from the supply cell, the J-side gallery laundry porter, cunningly insisted how he needed to follow me back to my cell to acquire a laundry log-sheet from me to document who, and from which cell chose to send laundry out on J-Gallery, a laundry log-sheet I am sure he'd already acquired the night before from the officer that was just downstairs on the front side of where he locked, who'd brought me up over a dozen copies. To clarify exactly what he had meant, he displayed to me a copy in his hand, right there before C.O. J. Reyes, as they stood between the J & N galleries. This same porter adamantly insisted how he needed to accompany me back to my cell to attain these laundry log-sheet, even after I'd told him no, how I would bring him back a few copies, right in front of C.O. J. Reyes, hoping that she would intervene,

and assent, but she just stared at me, and said nothing. Here it clearly shows what was being orchestrated to take place that same morning. October 13, 20022, C.O. J. Reyes clearly knew something was going to happen, and knew that I could or would be attacked, and did nothing to prevent it from happening, instead, let the J-side gallery porter insist on following me back to my cell.

7) CAUSES OF ACTIONS

FIRST CAUSE OF ACTION

Defendant, Anthony Annucci, was the acting commissioner for New York State Department of Corrections Community Supervision, and in general, Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833 114 S. ct 1970 (1994) (citation omitted). Although, defendant, Annucci was not personally involved in the incident, but he was in charge of the State Correctional Facility, there for he is liable for the assault that took place. No weapon should be in the hands of other I/I's, especially when all I/I's entering the state are searched.

The eighth Amendment does not require "comfortable prisons" it does require that prison officials "must take reasonable measures to guarantee the safety of the inmates..." Farmer v. Brennan, 511 U.S. 825,832, 114 S. ct. 1970 (1994) quoting Hudson v. Palmer, 468 U.S. 517, 527, 104 S. ct. 3194(1984); see also Gaston v. Coughlin, 249 F.3d 156, 164 (2d. cir. 2001). However, not "every injury suffered by one prisoner at the hands of another ...translates into constitutional liability for prison officials" at a facility. Farmer, 511 U.S. at 834, 114 S.ct. 1970; see also Gasten, 249 F.3d at 164. Instead, the failure to protect an inmate only violates the constitution when prison officials act with act with "deliberate indifference." Farmer, 511 U.S. at 834, 114 S. ct 1970; see also Gasten "Supra" 249 F. 3d at 164.

To meet the deliberate indifference standard which embodies both an objective and subjective prong Hathaway v. Coughlin, 99 F. 3d 550, 553 (2d cir. 1996). Objectively, the deprivation must be "sufficiently serious" meaning the prison condition posed "a substantial risk of serious harm." Farmer, 511 U.S. at 834, 114 S. ct. 1970; Hathaway, 99 F. 3d at 553. Subjectively, the prison official must act with a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834, 114 S. ct. 1970; Hathaway, 99 F. 3d at 553. Such culpability exists when an official has knowledge that an I/I faces a substantial risk of serious harm and he disregards that

risk by failing "to take reasonable measures to abate the harm Hayes v. N.Y.C. Dept. of Corr., 84 F.3d 614, 620 (2d cir. 1996) (Citing Farmer, 511 U.S. at 847, 114 S. ct. 1970) Plaintiff "must allege action or omissions sufficient to demonstrate deliberate indifference, mere negligence will not suffice" Hayes, 84 F. 3d at 620.

In other words, for plaintiff to state a claim for deliberate indifference base on failure to protect him, he must allege that corrections officers knew of and disregarded a particular risk to his safety. Zimmerman v. Macomber, 95 civ-0882, 2001 WL 946383 at (S.D.N.Y. August 21, 2001). Here, most certain prison officials knew of his disciplinary background, yet still allowed him to work as a porter in a meritorious housing area. Defendants Anthony Annucci, the Commissioner, Michael Capara, the Superintendent, of Sing-Sing Correctional Facility, Deputy Supt. of Admin., John Doe(1), Deputy Supt. of Security John Doe(2), Sgt. Alvarado, C.O. J. Reyes, the gallery officer, and C.O. R. Franklin. These defendants knew of this incarcerated individuals background, and institutional records, but allowed him to work as a porter in the housing area.

Wherefore, these defendants knew of this incarcerated individuals background, and disciplinary record but took no reasonable measures to abate the harm. Hayes v. N.Y.C. Dept. of Corr., 84 F .3d 614, 620(2d cir.1996) (Citing Farmer 511 U.S. at 847, 114 S. ct. 1970). These defendants knew that objectively the everyday prison life in a maximum-security facility "A," is sufficiently serious "meaning the prison conditions posed a substantial risk of serious harm." Farmer, 511 U.S. at 834, 114 S.ct. 1970; Hathaway 99 F.3d at 553. Subjectively, the Correctional Officer, J. Reyes must act with a "sufficiently culpable state of mind." Farmer, 511 U.S. at 1970; Hathaway, 99 F.3d at 553. Here, C.O. J. Reyes had knowledge that an I/I faced a substantial risk by failing to take reasonable measures to abate the harm. Hayes v. Supra, 84 F.3d 614, 620 (2d cir. 1996) Farmer supra, 511 U.S. at 847)

To be clear, A prisoner's claim for failure to protect invokes the eighth amendment, and thereby comes in the purview of §1983. See Farmer v. Brennan, 511 U.S. 825, 832, 114 S. ct. (1994)(Citing Rhodes v. Chapman, 452 U.S. 337,349, 101 S. ct. 2392 (1981) and Helling v. Mckinney, 509 U.S. 25, 31, 113 S. ct. 2475 (1993)). The eighth amendment impose a duty on prison officials to "take reasonable measure to guarantee safety of the inmates." id. at 832, 114 S.ct. 1970(

citing Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S.ct. 3194, (1984); In particular a prison official has a duty to protect prisoners from violence from other prisoners. See id. at 825,114 S.ct. 1970. While prison conditions may be harsh being violently assaulted in prison simply is not "part of the penalty that criminal offenders pay for their offenses against society." id, at 833, 114 S. ct. 1970. However, not every assault by a fellow prisoner translates into a constitutional violation. Id. at 834, 114 S. ct. 1970. Rather a prisoner must first show that he was "incarcerated under conditions posing a substantial risk of serious harm." Id. at 827, 114 S. ct. 1970. It is also settled that a prison official showed "deliberate indifference" to the prisoner's health or safety. Deliberate indifference exists where "the officer knows of and disregards an excessive risk to inmates health or safety; the official must be aware of fact from which the interference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. 511 U.S. at 837, 114 S.ct. 1970.

Taken together, Jenkins complaint, with supporting documents as evidence, does support the element of deliberate indifference for failure to protect claim.

8) PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this court grant the following relief.

9) A declaration that the acts and omission described herein violated plaintiff's rights under the constitution and law of the United States.

10) Compensatory damages in the amount of $5,000,000 against each defendant, jointly and severally.

11) Punitive damages in the amount of $ 1,000,000 against each defendant.

12) A jury trial on all issues triable by jury.

13) Plaintiff's costs in this suite.

14) Any additional relief this court deems just, proper and equitable I declare under penalty of perjury that the foregoing is true and correct.

Date: September 2, 2025

Sworn to before me
this 2nd day September 2025

Respectfully Submitted,

Terrell Jenkins

KIM A FRANCOIS
Notary Public - State of New York
No. 01FR6313861
Qualified in Sullivan County
My Comm. Expires Oct. 27, 2026

*cc./file*
*Hon. Letitia James, Esq.*
*NYS Attorney General*
*Department of Law*
*The Capitol, P.O.Box7341*
*Albany, NY 12224-0341*

# EXHIBIT
# A

STATE OF NEW YORK
DEPT OF CORRECTIONS AND COMMUNITY SUPERVISION
UNUSUAL INCIDENT REPORT

PRINTED AT
10/21/22 02:23 PM

SING SING GENERAL [redacted]

INCIDENT DATE 10/13/22 TIME 07:54 AM LOCATION GALLERY 0A NN

TELEPHONE DATE 10/13/22 TIME 01:33 PM

PERSON CALLING LT D. MONTGOMERY
PERSON RECEIVING LT JOHN CONKLIN

REPORT DATE 10/21/22 PERSON REPORTING LT J. MCMORROW

USE OF FORCE NO WEAPON USED YES WORKPLACE VIOLENCE NO

*****************************************************************************

ASSAULT (02) 01
ON INCARCERATED INDIVIDUAL

*****************************************************************************

DESCRIPTION:

CO. R. FRANKLIN OBSERVED [redacted] AND [redacted] STRIKING I/I JENKINS, T 14A2803 GP-0A-NN-73S WITH CLOSED FIST PUNCHES AND KICKS. I/I [redacted] WAS ALSO MAKING SLASHING MOTIONS TOWARD I/I JENKINS. CO. J. REYES UTILIZED HER PAS TO CALL FOR ASSISTANCE. CO. REYES AND CO. FRANKLIN DIRECTED I/I [redacted] AND I/I [redacted] TO STOP THEIR ASSAULT AND THEY BOTH RAN TO THEIR CELLS. SGT. A. ALVARADO WAS NOTIFIED AND RESPONDED.

*****************************************************************************

EVENTS CAUSING:

C.O. FRANKLIN OBSERVED INCARCERATED INDIVIDUAL [redacted] AND INCARCERATED INDIVIDUAL [redacted] ASSAULTING INCARCERATED INDIVIDUAL JENKINS, T. DIN-14A2803 GP-HBA-N-87 WHO WAS ON THE GALLERY FLOOR. [redacted] WAS ALSO MAKING SLASHING MOTIONS TOWARD JENKINS. C.O. REYES CALLED FOR ASSISTANCE. [redacted] AND [redacted] WERE ORDERED TO STOP AND BOTH RAN TO THEIR CELLS.

*****************************************************************************

A1

STATE OF NEW YORK
DEPT OF CORRECTIONS AND COMMUNITY SUPERVISION
UNUSUAL INCIDENT REPORT

PRINTED AT
10/21/22 02:23 PM

SING SING GENERAL [redacted]

INCIDENT DATE 10/13/22 TIME 07:54 AM LOCATION GALLERY OA NN

USE OF FORCE NO WEAPON USED YES WORKPLACE VIOLENCE NO

************************************************************************************

ACTION TAKEN:

ALL INVOLVED I/I WERE ESCORTED TO THE FACILITY CLINIC. I/I JENKINS WAS EXAMINED BY RN A. AKARUMEH WHO NOTED, [redacted] RN AKARUMEH DETERMINED THAT THE LACERATIONS WERE CONSISTENT WITH A [redacted] I/I JENKINS WAS TRANSPORTED TO MT. VERNON HOSPITAL VIA STATE VAN, WHERE HE RECEIVED [redacted] I/I JENKINS WILL BE ADMITTED TO THE INFIRMARY UPON HIS RETURN TO THE FACILITY. I/I [redacted] WAS EXAMINED BY RN AKARUMEH, WHO NOTED NO INJURIES. I/I [redacted] WAS CONFINED TO [redacted] I/I [redacted] WAS EXAMINED BY RN AKARUMEH, WHO NOTED NO INJURIES. I/I [redacted] WAS RETURNED TO HIS CELL. SGT. ALVARADO'S INVESTIGATION DETERMINED THAT I/I [redacted] AND I/I [redacted] ASSAULTED I/I JENKINS WITH KICKS AND PUNCHES. I/I JENKINS DID NOT FIGHT BACK. I/I [redacted] THEN ASSAULTED I/I JENKINS WITH AN UNRECOVERED CUTTING INSTRUMENT. SGT. ALVARADO DIRECTED STAFF TO SEARCH THE INCIDENT AREA FOR WEAPONS, NO WEAPON WAS RECOVERED. SGT. ALVARADO AUTHORIZED THE SEARCH OF CELL OA-NN-73S, CELL OA-NN-86S, AND CELL OA-NN-87S, NO CONTRABAND WAS RECOVERED. ALL PERTINENT DOCUMENTS AND PHOTOGRAPHS SUBMITTED. OD CAPT. NIXON WAS NOTIFIED.

************************************************************************************

MEDICAL REPORT:

INCARCERATED INDIVIDUAL JENKINS WAS EXAMINED AND [redacted] JENKINS WAS SENT TO MOUNT VERNON HOSPITAL BY STATE VAN WHERE HE RECEIVED [redacted] TO CLOSE THE LACERATIONS. INCARCERATED INDIVIDUAL [redacted] WAS EXAMINED AND NO INJURY WAS NOTED. INCARCERATED INDIVIDUAL [redacted] WAS EXAMINED AND NO INJURY WAS NOTED.

A. AKARUMEH /NURSE — 10/13/22 08:05 AM

EXAMINER NAME/TITLE — EXAM DATE/TIME

************************************************************************************

A2

STATE OF NEW YORK
DEPT OF CORRECTIONS AND COMMUNITY SUPERVISION
UNUSUAL INCIDENT REPORT

PRINTED AT
10/21/22 02:23 PM

SING SING GENERAL [redacted]

INCIDENT DATE 10/13/22 TIME 07:54 AM LOCATION GALLERY OA NN

USE OF FORCE NO WEAPON USED YES WORKPLACE VIOLENCE NO

*****************************************************************************************

PROPERTY DAMAGE:

NO PROPERTY DAMAGED.

*****************************************************************************************

NOTIFICATION (FAMILY):

NO NOTIFICATION REQUIRED.

NOTIFICATION (POLICE/OTHER):

NO NOTIFICATION REQUIRED.

*****************************************************************************************

INMATE INFORMATION:

*****************************************************************************************

JENKINS, TERRELL 14A2803 DOB 04/07/1966 ETHNIC- BLACK

| GEN INCIDENT - SPECIFIC INCIDENT | ROLE | WEAPON | FORCE | INJURY |
|---|---|---|---|---|
| ASSAULT - ON I/I | VICTIM | | | LACERATION |

*****************************************************************************************

[redacted] [redacted] ETHNIC- BLACK

| GEN INCIDENT - SPECIFIC INCIDENT | ROLE | WEAPON | FORCE | INJURY |
|---|---|---|---|---|
| ASSAULT - ON I/I | PERP | BODY USE | | |

*****************************************************************************************

[redacted] [redacted] ETHNIC- BLACK

| GEN INCIDENT - SPECIFIC INCIDENT | ROLE | WEAPON | FORCE | INJURY |
|---|---|---|---|---|
| ASSAULT - ON I/I | PERP | UNR/CUTTNG | | |

A.3

STATE OF NEW YORK
DEPT OF CORRECTIONS AND COMMUNITY SUPERVISION
UNUSUAL INCIDENT REPORT

PRINTED AT
10/21/22 02:23 PM

SING SING GENERAL [redacted]

INCIDENT DATE 10/13/22 TIME 07:54 AM LOCATION GALLERY OA NN

USE OF FORCE NO WEAPON USED YES WORKPLACE VIOLENCE NO

************************************************************************************

************************************************************************************
EMPLOYEE INFORMATION:
************************************************************************************

AKARUMEH, [redacted] NURSE [redacted]

GEN INCIDENT - SPECIFIC INCIDENT
ASSAULT - ON I/I

******************************************

FRANKLIN, [redacted] CO

GEN INCIDENT - SPECIFIC INCIDENT
ASSAULT - ON I/I

******************************************

JAMES, [redacted] SGT

GEN INCIDENT - SPECIFIC INCIDENT
ASSAULT - ON I/I

******************************************

REYES, [redacted] CO

GEN INCIDENT - SPECIFIC INCIDENT
ASSAULT - ON I/I

******************************************

ALVARADO, [redacted] SGT

GEN INCIDENT - SPECIFIC INCIDENT
ASSAULT - ON I/I

******************************************

SPT MICHAEL CAPRA
SUPERINTENDENT

10/21/22
DATE

A4

FORM 1595 (11/11) STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

# INMATE INJURY REPORT

| | | | |
|---|---|---|---|
| Facility: SSCF | Date of Injury: 10/13/22 | Time of Injury: 07:54A | Location Injury Occurred: N-gally - North |
| Inmate Name: Jenkins T | | DIN: 14A2803 | Housing Location: N-73 |

What was cause of Inmate's injury? Alleged Assault by I/I / three Man [illegible]

Inmate's Statement: I WAS INFORMED HOW I WAS BEING JUMP FOR MY LAUNDRY PORTER JOB

Inmate's Signature: [signature] Date: 10/13/22

Witnesses: SGT. S. GREGORY SERGEANT [signature]

Reporting Employee: SGT. S. GREGORY [signature] Title:

## FACILITY HEALTH SERVICES REPORT

Date injury reported: 10/13/22 Time: 08:05 A AM/PM

Description of injury*: pt has two Laceration to left Side of head apprx 1/4 in x 1/4 in; Abrasions to Right knee apprx 3/4 x 3/4 in and abrasion to Right back elbow apprx 1/4 x 1/4 in. Laceration consistent with cutting instrument.




Date of medical examination: 10/13/22 Time: 08:05A

Services Provided: pt injuries clean with normal saline and bandage, Sent to MVH by state van. T 97.7 P 82 R 16 Bp 120/72 [illegible] 98%

Was inmate admitted to facility infirmary? ☐ Yes ☒ No

Outside hospital? ☒ Yes ☐ No If yes, where? MVH

PCP on site evaluation? ☐ Yes ☒ No

Telemed evaluation? ☐ Yes ☒ No

Name and title of person furnishing treatment at facility:

Signature: [signature] Print: Alexander A I Title: RN

This form is to be forwarded to the Fire & Safety Officer within 24 hours for review and filing.
* Attach a memorandum if additional information is needed for the description of injury.

# EXHIBIT
# B



10/18/22

JENKINS, T N73

14 A2803

"B" 1







10/18/22

JENKINS, T N73

14A2803

"B"2

# EXHIBIT
# C

FORM 2131E (9/12) STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

# INMATE GRIEVANCE COMPLAINT

50

Grievance No. 1300-22

SING SING CORRECTIONAL FACILITY

Date: 11-2-22

Name: Terrell Jenkins Dept. No.: 14a2803 Housing Unit: SP C-3-211

Program: ________________ AM ________________ PM

***(Please Print or Type – This form must be filed within 21 calendar days of Grievance Incident)****

Description of Problem: (Please make as brief as possible) ON THE MORNING OF OCTOBER 13TH 2022 RETURNING FROM THE MESS HALL AT AROUND 07:00AM, I WAS SURROUNDED BY 3- ASSAILANTS AND ATTACKED ON "N" GALLERY FEET FROM N-73 WHERE I LOCKED. MY PATH WAS BLOCKED, WHERE ONE STATED, "I WANT THAT JOB", TWICE. WITHIN SECONDS, CONTEMPLATING HOW TO RE-ACT UPON SUCH REQUEST, I WAS SUCKER PUNCHED FROM DIFFERENT DIRECTION, UNTIL I FELL TO MY KNEES WHERE I WAS 'CUT' ON THE LEFT SIDE OF MY HEAD MOVING TO AVOID BEING CUT IN MY FACE. I WAS CONTINUOUSLY KICKED IN MY HEAD, FACE, AND BACK THE UNTIL STAFF ARRIVED. MY FEAR BECAME MY REALITY WHERE CARE, CUSTODY, AND CONTROL WOULD BE COMPROMISED.

Grievant Signature: Terrell Jenkins

Grievance Clerk: ______________________ Date: ______________________

Advisor Requested ☐ YES ☐ NO Who: ______________________

Action requested by inmate: (1) ENHANCE SECURITY MEASURES TO PREVENT FUTURE ASSAULTS. (2) MONETARY DAMAGES RECOMPENSE FOR THE PREVENTABLE, UNDUE PAIN AND SUFFERING I HAD TO ENDURE. (3) MEDICAL ATTENTION FOR MENTAL, PSYCHIATRIC, ANXIETY EXPERIENCE I'D SUFFERED DISABLING ME TO SLEEP AT NIGHT.

The Grievance has been formally resolved as follows:

RECEIVED

NOV 02 2022

SING SING I.G.P.

This Informal Resolution is accepted:
(To be completed only if resolved prior to hearing)

Grievant Signature: ______________________ Date: ______________________

If unresolved, you are entitled to a hearing by the Inmate Grievance Resolution Committee (IGRC).

* An exception to the time limit may be requested under Directive #4040, section 701.6(g).

"C"1

| NEW YORK STATE — Corrections and Community Supervision | GRIEVANCE NO. SS-1300-22 | DATE FILED 11/16/22 |
|---|---|---|
| | FACILITY SING SING | POLICY DESIGNATION Institutional |
| INCARCERATED GRIEVANCE PROGRAM | TITLE OF GRIEVANCE Miscellaneous | CASE CODE 50 |
| **SUPERINTENDENT RESPONSE** | SUPERINTENDENT'S SIGNATURE [signature] | DATE 1/12/23 |

| GRIEVANT | DIN | HOUSING UNIT |
|---|---|---|
| Jenkins, T | 14A2803 | HBC |

Grievant states security measures should be enhanced as a result of the injuries he sustained on the gallery by other incarcerated individuals. Grievant further states, he should receive monetary damages for the pain and suffering.

Grievance Denied. Investigation reveals there is a well documented unusual incident on file surrounding this incident. Efforts are made to ensure all incarcerated individuals are safe, however, unfortunate incidents happens, as in this case. Grievant seen by medical and further followed up by mental health staff during rounds.

**APPEAL STATEMENT**

If you wish to appeal the above decision of the Superintendent, please sign below and return this copy to the IGRC at the facility where the grievance was filed. You have seven (7) calendar days from receipt of this notice to file your appeal.* Please provide a reason why you are appealing this decision to CORC.

I WAS INJURED ONLY BECAUSE STAFF DOES NOT LOCK PRISONER'S IN THEIR CELLS AFTER RETURNING FROM MEALS, THEREBY AFFORDING THEM OPPORTUNITIES TO ASSAULT OTHER PRISONER'S.

[signature] 1/18/23

GRIEVANT'S SIGNATURE — DATE

GRIEVANCE CLERK'S SIGNATURE — DATE

*An exception to the time limit may be requested under Directive #4040, section 701.6 (g)

Form 2133 (12/21)

"C"2

Mr. Terrell Jenkins #14A-2803
Eastern N.Y. Correctional Fac
30 Institution Rd., P.O. Box 338
Napanoch, N.Y. 12458-0338

RECEIVED
SDNY PRO SE OFFICE
2025 SEP -9 PM 1:48

EASTERN
CORRECTIONAL FACILITY

NEOPOST
09/04/2025
US POSTAGE $00

USM 4P
SDNY

*United States District Court*
*Southern District of New York*
*Attn: Pro se intake unit*
**Daniel Patrick Moynihan U.S. Courthouse**
**500 Pearl Street Room 200**
**New York, N.Y. 10007-1312**